## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**KRISTEN JEANNINE POND,**

*Plaintiff,*

**v.**

**KILOLO KIJAKAZI,**
Acting Commissioner of Social Security,

*Defendant.*

Case No. 1:21-cv-912 (RCL)

## MEMORANDUM OPINION

Plaintiff Kristen Jeannine Pond brings this action challenging a Social Security Administration determination that she is ineligible for disability insurance benefits pursuant to 42 U.S.C. § 405(g). Before the Court are Ms. Pond's Motion for Judgment of Reversal, ECF No. 15, and defendant Commissioner of the Social Security Administration's ("Commissioner" or "SSA") Motion for Judgment of Affirmance, ECF No. 20. Upon consideration of the parties' briefing, the Administrative Record ("AR"), including the Administrative Law Judge's ("ALJ") decision, and the applicable law, this Court will **DENY** Ms. Pond's motion, **GRANT** the SSA's motion, and **AFFIRM** the SSA's determination regarding Ms. Pond's ineligibility for benefits.

### I.       BACKGROUND

The Court will begin by reviewing the statutory and regulatory scheme, followed by Ms. Pond's relevant medical history, and then the procedural history of this case.

#### A. The Statutory and Regulatory Scheme

Under the Social Security Act, an individual who is "disabled" is eligible to be paid benefits by the Social Security Administration. 42 U.S.C. § 1382. "An individual shall be considered disabled" if the individual is "unable to engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be expected to result in death or

which has lasted or can be expected to last for a continuous period of not less than twelve months."

*Id.* § 1382c(a)(3)(A). To make a disability determination, "an ALJ gathers evidence, holds a

hearing, takes testimony, and performs a five-step legal evaluation of the claimant using that

evidence." *Davis v. Berryhill*, 272 F. Supp. 3d 154, 158 (D.D.C. 2017). Under this five-step,

sequential inquiry, the ALJ determines whether:

> (1) the claimant is presently engaged in substantial gainful activity; (2) the claimant
> has a medically severe impairment or impairments; (3) the claimant's impairment
> is equivalent to one of the impairments listed in the appendix of the relevant
> disability regulation; (4) the impairment prevents the claimant from performing her
> past relevant work; and (5) the claimant, in light of her age, education, work
> experience and Residual Functional Capacity ("RFC"), can still perform another
> job that is available in the national economy.

*Id.* (citing 20 C.F.R. § 416.920).

The claimant bears the burden of proof at steps one through four of the inquiry. *See*

*Callahan v. Astrue*, 786 F. Supp. 2d 87, 89 (D.D.C. 2011). The burden of proof shifts to the SSA

at step five. *Id.* If the ALJ finds that the individual is not disabled at any step, the ALJ will make

a determination at that time and will not move onto the next step. 20 C.F.R. § 404.1520(a)(4). If

the ALJ finds that the individual can adjust to other work based on her age, education, and RFC

assessment, she is not disabled under the Social Security Act. *Id.* §§ 404.1520(h), 416.920(h).

**B. Factual Background**

Ms. Pond alleges that she became disabled in June 2015 at the age of 43 due to a number

of ailments. AR 49, 52, 70–71. Ms. Pond stated that her condition worsened in January 2017

following a motor vehicle accident. AR 55. Starting in 2015, Ms. Pond met with a variety of

medical professionals about her health. Only some of those professionals' medical opinions are

implicated in the ALJ's decision. One professional was Dr. Ranjeev Pandarinath, an orthopedic

surgeon, whom Ms. Pond consulted in August 2017 about a possible total knee replacement. AR 428–30. Another was Ms. Sara Franks, a psychotherapist, who observed Ms. Pond in August and December 2018. AR 550–58. In mid-January 2019, Ms. Pond met with Dr. Scarlet Jett, a psychologist, who gave Ms. Pond a consultative examination for psychiatric symptoms. AR 562–67. That same month, Ms. Pond met with Dr. Gemma Nachbahr, an SSA psychological consultant, for a mental functional capacity determination. AR 70–76. In May 2019, Ms. Pond visited Dr. Nancy Heiser, an SSA medical consultant, for another mental capacity determination. AR 95–98. And from approximately 2018 through 2019, Dr. Stella Jefferies, a nurse practitioner, evaluated and treated Ms. Pond for a variety of ailments, including knee and back pain. AR 642–79.

As of 2019, Ms. Pond's activities of daily living included: cooking (two to six times per week), cleaning (two to three times per week), grocery shopping (one to three times per week), doing laundry (three to six times per month), and bathing (up to two times per week). AR 572. Ms. Pond maintained an active driver's license. AR 50. She reported that sometimes she was too tired, in too much in pain, or too depressed to engage in many recreational activities, but that she did watch television, listen to music, and attend some events. AR 566, 572. Ms. Pond was able to independently manage her finances, and her typical schedule involved caring for her teenaged daughter and going to appointments. *Id.* She also walked her dog with the assistance of a cane. AR 55, 60. No medical professional prescribed use of a cane. AR 21.

Ms. Pond holds a bachelor's degree and has previously worked as an administrative assistant, executive secretary, and waitress, among other positions. AR 30, 50–51. She has not applied for another job since her work stoppage. AR 46.

3

**C. Procedural History**

Ms. Pond filed an application for Title II Disability Insurance Benefits under the SSA on September 25, 2017. AR 16. Ms. Pond alleged that her disability began on June 30, 2015 due to fibromyalgia, ruptured discs, hypothyroidism, obstructive sleep apnea, chronic fatigue syndrome, anxiety, clinical depression, post-traumatic stress disorder, kyphoscoliosis, arthritis, and sciatica. AR 70–71. Ms. Pond's application for benefits was initially denied on January 28, 2019, and again upon reconsideration on May 29, 2019. AR 105–08, 110–13. Ms. Pond requested and received a telephonic hearing before an ALJ, which occurred on May 14, 2020. AR 43–63; AR 121–23. Ms. Pond appeared, testified, and was represented by an attorney. *Id.* A vocational expert also testified as to the jobs Ms. Pond could perform in the national economy. *Id.*

On June 9, 2020, the ALJ issued a decision determining that Ms. Pond was not disabled because she could perform sedentary work that existed in the national economy. AR 16–32. Ms. Pond appealed the decision, and the Appeals Council subsequently denied Ms. Pond's request for review. AR 1–7. Ms. Pond then filed this action seeking review of the agency's decision. Compl., ECF No. 1. Specifically, Ms. Pond moved for a judgment of reversal, Pl.'s Mot., and included a memorandum in support, Pl.'s Mem, ECF No. 15-1. The SSA moved to affirm the agency's decision, Def.'s Mot., and submitted a memorandum in support of affirmance and in opposition to reversal, ECF No. 21. Ms. Pond filed a combined opposition to the SSA's motion and reply in support of her own motion. Pl.'s Reply, ECF No. 23. Both motions are now ripe for review.

## II.   LEGAL STANDARDS

### A.  Judicial Review of the ALJ's Disability Determination

The Social Security Act grants federal district courts jurisdiction over civil cases that challenge the final decision of the SSA Commissioner. 42 U.S.C. § 405(g). The Court enters its judgment upon the pleadings and transcript of the record. *Id.*; *Igonia v. Califano*, 568 F.2d 1383,

1389 (D.C. Cir. 1977). In this way, "[a] district court sits in what is essentially an appellate role when it reviews the Commissioner's disability determination." *Grant v. Kijakazi*, 619 F. Supp. 3d 128, 135 (D.D.C. 2022) (citing *Smith v. Bowen*, 826 F.2d 1120, 1121 (D.C. Cir. 1987)).

The Court's review of the ALJ's disability determination is limited to deciding whether the ALJ correctly applied the relevant legal standards and whether substantial evidence supported the ALJ's findings. 42 U.S.C. § 405(g); *Butler v. Barnhart*, 353 F.3d 992, 999 (D.C. Cir. 2004). "The plaintiff bears the burden of demonstrating that the Commissioner's decision [was] not based on substantial evidence or that incorrect legal standards were applied." *Settles v. Colvin*, 121 F. Supp. 3d 163, 169 (D.D.C. 2015) (alteration in original) (internal citation omitted). The substantial-evidence standard is "highly deferential." *Rossello ex rel. Rossello v. Astrue*, 529 F.3d 1181, 1185 (D.C. Cir. 2008) (Kavanaugh, J.) (citing *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)). "The reviewing court may neither reweigh the evidence presented to it nor replace the Commissioner's judgment concerning the credibility of the evidence with its own." *Goodman v. Colvin*, 233 F. Supp. 3d 88, 104 (D.D.C. 2017) (internal quotation marks and citation omitted). Put differently, a district court will uphold the ALJ's decision as long as the ALJ builds a "logical bridge" between the evidence and the ALJ's conclusions, enabling the Court to "assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Lane-Rauth v. Barnhart*, 437 F. Supp. 2d 63, 67 (D.D.C. 2006) (quoting *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002)).

"If the ALJ is found to have applied the correct legal standards and met the substantial evidence threshold, the reviewing court may grant the Commissioner's motion for an affirmance of the disability determination." *Grant*, 619 F. Supp. 3d at 136 (citing *Hicks v. Astrue*, 718 F. Supp. 2d 1, 17 (D.D.C. 2010)).

**B. ALJ Review of Medical Opinion Evidence**

Under the applicable SSA regulations, ALJs are directed to "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion[.]" 20 C.F.R. § 404.1520c(a). "When an ALJ decides not to give a treating source's medical opinion controlling weight, the ALJ should consider the following factors—the length and frequency of the examining relationship, the nature and extent of the treatment relationship, supportability, consistency, specialization, and other factors." *Bennett v. Saul*, 18-cv-1745 (CKK), 2019 WL 5549815 at *8 (D.D.C. Oct. 27, 2019) (citing 20 C.F.R. § 404.1527(c)(2)). The most significant factors are supportability of the opinion and its consistency with respect to the rest of the record. *See Davis*, 272 F. Supp. 3d at 174. An ALJ properly explains the supportability factor by discussing "objective medical evidence from an acceptable medical source," instead of merely reciting a medical source's opinion of a claimant's limitation. *Kyler v. Kijakazi*, 19-cv-3334 (CJN), 2022 WL 1165859 at *3 (D.D.C. Apr. 20, 2022) (citing 20 C.F.R. § 416.929(a)). An ALJ properly explains the consistency factor when the ALJ discusses how a medical source's opinion conflicts with other evidence in the record, including the claimant's own activity report. *See id.* Courts review the totality of an ALJ opinion to determine if the ALJ's decision regarding a medical opinion should be affirmed. *See, e.g., Brown v. Saul*, No. 18-1294 (RCL), 2020 WL 5653696 at *3 (D.D.C. Sept. 23, 2020) (internal citations omitted).

### III.   DISCUSSION

Ms. Pond does not dispute the ALJ's conclusions for steps one, two, or four of the disability evaluation. She does, however, argue that the ALJ erred in two ways during the remaining steps. First, she argues that the ALJ's step-three decision was not supported by substantial evidence because the ALJ improperly discounted certain medical opinions in concluding that Ms. Pond's

impairments did not qualify her as "disabled" under the applicable regulations and because the ALJ mischaracterized evidence in the record. Pl.'s Mem. at 23–30. Second, she argues that the ALJ's step-five decision was not supported by substantial evidence because the ALJ did not properly evaluate Dr. Jefferies's medical opinion in determining Ms. Pond's residual functional capacity ("RFC"). Pl.'s Mem. 14–22. The Court finds Ms. Pond's arguments unpersuasive.

### A. The ALJ's Determination That Ms. Pond's Impairments Were Not Medically Equivalent to Impairments Listed in the Relevant Regulation Is Supported by Substantial Evidence

The main thrust of Ms. Pond's motion takes issue at the ALJ's conclusion at step three of the disability determination, that she did not meet or medically equal any of the impairments listed by regulation, by insisting that the ALJ's conclusion was not based on substantial evidence. Pl.'s Mem. at 23–28. On the contrary, this Court's review of the record shows that the ALJ based the determination on substantial evidence. Therefore, the Court affirms the ALJ's step-three decision.

*1. Statutory Criteria*

20 C.F.R. pt. 404, subpt. P, app. 1 § 12.04 describes the requirements for depressive, bipolar, and related disorders. That section, in relevant part, describes each condition in three paragraphs: (A) the medical criteria a claimant must meet through her medical evidence; (B) the functional criteria an ALJ assesses in determining how a claimant's disorder limits her functionality; and (C) the criteria the ALJ uses to evaluate "serious and persistent" mental disorders. *Id.* § 12.01. For a claimant's condition to qualify as medically equivalent to a condition listed in that section, the ALJ must conclude that the claimant satisfies the requirements of Paragraph A and either Paragraph B or C. *Id.* § 12.20.

Paragraph B, the only paragraph at issue here, lists the relevant mental functioning areas as: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate,

persist, or maintain pace; and (4) adapt or manage oneself. *Id.* § 12.04(B) (referencing *id.* §§ 12.00E1–E4). The mental functioning areas are evaluated on a five-point scale ranging from "no" limitation to "extreme" limitation. *Id.* § 12.00F(2). A claimant who does not have an "extreme" limitation in one area of mental functioning will only qualify for benefits if she can demonstrate a "marked" limitation in two such areas. *Id.* A "marked" limitation is defined as the claimant's ability to function "independently, appropriately, effectively, and on a sustained basis" in a given area is "seriously limited." *Id.* In contrast, a "moderate" or "mild" limitation is one in which the claimant's ability to function is "fair" or just "slightly limited." *Id.*

   2.  *ALJ's Findings*

   The ALJ concluded that Ms. Pond did not meet the Paragraph B criteria because she does not experience an "extreme" limitation in any single mental functioning area nor a "marked" limitation in two such areas. AR 20. Moreover, the ALJ determined that Ms. Pond experiences only a "moderate" limitation in interacting with others and concentrating, persisting, or maintaining pace, and a "mild" limitation in understanding, remembering, or applying information and adapting or managing herself. [1] AR 20–21.

   To reach the conclusion regarding Ms. Pond's "moderate" limitation in interacting with others, the ALJ looked to the following pieces of evidence: "[Ms. Pond's] testimony describing interactions with her prior employer, statements in her function report regarding issues getting along with others, and the claimant's mental status examinations." AR 21. The ALJ discussed Ms. Pond's mental status examinations from two medical professionals, Dr. Heiser and Dr. Nachbahr, who concluded that Ms. Pond's "mental impairments resulted in moderate restrictions in

---

[1] The ALJ also concluded that Ms. Pond did not meet the requirements for Paragraph C, AR 21, though Ms. Pond does not dispute the ALJ's conclusion regarding Paragraph C.

. . . interacting with others." AR 23. Specifically, Dr. Heiser stated that, "[Ms. Pond] can interact adequately with others to perform routine tasks with occasional interaction with the public" and that her "[a]daptive skills are adequate." AR 97. Dr. Nachbahr added, "[Ms. Pond] appears mentally capable of performing work-related activities which involve limited interaction." AR 81. Reviewing all of this evidence, the ALJ found that "the mental status examinations in the record, the consultative examination reports, and the claimant's statements generally support the degree of impairment opined by Dr. Heiser and Dr. Nachbahr as of the date they issued their opinions." AR 29. Importantly, the ALJ noted that Dr. Heiser's and Dr. Nachbahr's opinions differed from other medical opinions in the record, particularly those of Ms. Franks, Dr. Jett, and Dr. Jefferies. *Id.* However, the ALJ identified that opinions from Ms. Franks, Dr. Jett, and Dr. Jefferies appeared to be "primarily based on the claimant's subjective allegations rather than the observations of the claimant's functioning and mental status examinations throughout the record." *Id.* Accordingly, the ALJ decided that the opinions of Dr. Heiser and Dr. Nachbahr were more persuasive than the opinions of Ms. Franks, Dr. Jett, or Dr. Jefferies. *Id.* The ALJ supported this conclusion by noting that, despite Ms. Pond's psychiatric diagnoses, "[t]he record documents she has prescription medication to treat her psychiatric symptoms" and that "[n]othing in the evidence suggests that this treatment is ineffective." AR 27.

To reach the conclusion regarding Ms. Pond's "moderate" limitation in concentrating, persisting, or maintaining pace, the ALJ stated that "mental status examinations, mental health records, and allegations in testimony and statements in function reports," as well as the medical opinions of Dr. Heiser, Dr. Nachbahr, Dr. Jett, and Dr. Pandarinath, "support some limitation in [Ms. Pond's] ability to concentrate, persist, and maintain pace" but that her "records do not establish that her mental conditions are so severe as to result in either marked or extreme

limitations in functioning." AR 21. Again, the ALJ noted that Dr. Heiser's and Dr. Nachbahr's opinions conflicted with Dr. Jett's opinions regarding Ms. Pond's ability to concentrate, but that the latter opinions were the product of Ms. Pond's subjective statements. AR 27, 29.

To reach the conclusion regarding Ms. Pond's "mild" limitation in adapting or managing herself and understanding, remembering, and applying information, the ALJ looked to statements and representations made by Ms. Pond as well as medical opinions from Dr. Heiser and Dr. Nachbahr, among other evidence. AR 22. Specifically, the ALJ noted that the "evidence shows her judgment and insight remains intact," that "[s]he can perform household chores, care for a minor child, operate a motor vehicle, and manage her personal affairs," and that her conditions have not "required psychiatric hospitalization" nor do they "prevent her from remaining aware of normal hazards and taking precautions." AR 27.

*3. Analysis*

Ms. Pond first argues that the ALJ's determination that she did not meet the functional criteria in Paragraph B was not supported by substantial evidence because the ALJ did not adequately consider a medical opinion by Dr. Jett, who opined that Ms. Pond experienced more severe limitations in the mental functioning areas of interacting with others and managing herself that the ALJ determined. Pl.'s Mem. at 23–25. The Court disagrees. The record reflects that the ALJ, who is not required "to give a treating source's medical opinion controlling weight," expressly considered why Dr. Jett's opinion was not supportable or consistent with the record. *Bennett*, 2019 WL 5549815 at *8.

Dr. Jett remarked that Ms. Pond experienced "marked limitations" in "interacting adequately with supervisors, co-workers, and the public" and "moderate limitations in managing [her]self." AR 566.

With respect to supportability, the ALJ determined that Dr. Jett's opinion on Ms. Pond's level of mental functioning was only "partly persuasive." AR 21. The ALJ stated that he reached this conclusion because Dr. Jett's opinion appeared to be based not on objective medical evidence but instead based on Ms. Pond's subjective statements. *Id.* As the ALJ explained:

> With regard to the opinion of Dr. Jett, . . . the examiner appears to rely excessively on the claimant's subjective allegations, which the evidence does not entirely support. The evidence of record supports some restriction in psychiatric functioning, but not to an extent to result in "marked" or "extreme" limitation. While the record certainly establishes the existence of severe mental impairments, the extent of the limitations assessed by Dr. Jett is not entirely supported substantial evidence or consistent with other opinions in the record.

AR 24.

The ALJ's conclusion regarding Dr. Jett's medical opinion was amply supported by the record. The ALJ described how, even though Dr. Jett indicated that Ms. Pond exhibited poor judgment and concentration, this observation reflected Ms. Pond's feelings and statements to Dr. Jett, rather than Dr. Jett's own assessment. AR 27. Instead, the ALJ credited more heavily other medical opinions in the record that relied on objective data. AR 29. Because the ALJ properly relied on objective, rather than subjective, medical evidence, and adequately documented that conclusion, the Court finds that the ALJ's determination of the supportability of Dr. Jett's opinion—or lack thereof—was proper. *See Kyler*, 2022 WL 1165859 at *3.

Regarding consistency, the ALJ accurately observed that Dr. Jett's opinion was not consistent with other evidence in the record. The ALJ remarked that Dr. Jett's report of Ms. Pond's "intact recent and remote memory and average cognitive function" was not consistent with another evaluation that reported her "poor concentration and unreliable memory function." AR 20–21. Additionally, the ALJ explicitly contrasted Dr. Jett's report, which documented "extensive psychiatric symptoms" and that Ms. Pond "demonstrated abnormality of mood, and affect" as well

as "impaired attention and concentration," with other health records submitted by Ms. Pond dated after her consultation with Dr. Jett which reported that she had full "judgment, insight, mood, and affect" as well as documented her "deni[al] of psychiatric symptoms." AR 22. Ms. Pond responds that Dr. Jett's report was, in fact, consistent with accounts by Dr. Jefferies and Ms. Franks. Pl.'s Mem. at 25–26. But this Court is not permitted to "reweigh the evidence presented to it nor replace the Commissioner's judgment concerning the credibility of the evidence with its own." *Goodman*, 233 F. Supp. 3d at 104. And Dr. Jett's conclusion that Ms. Pond experienced "no limitations" in understanding, remembering or applying information was contrary to the other evidence in the record, evidence which led the ALJ to conclude the Ms. Pond has a "mild" limitation in this area. AR 21. Thus, taken together, this analysis clearly shows that the ALJ met his burden of discussing the consistency factor with respect to Dr. Jett's opinion. *See Patricia T. v. Kijakazi*, 21-cv-1028 (GMH), 2022 WL 3583634 at *15 (D.D.C. Aug. 22, 2022).

Based on the entirety of the record, this Court finds that the ALJ properly discussed the supportability and consistency factors bearing on Dr. Jett's medical opinion. Furthermore, based on the ALJ's determination with respect to those factors, the ALJ properly built a logical bridge to the conclusion that the opinion was only partly persuasive. This conclusion was therefore supported by substantial evidence. *See Lane-Rauth*, 437 F. Supp. 2d at 67.

Ms. Pond next argues that the ALJ's decision with respect to the Paragraph B criteria was not supported by substantial evidence because the ALJ did not give due weight to opinions by Ms. Franks or Dr. Pandarinath. Pl.'s Mem. at 29. This argument, like the previous one, is unavailing.

As a threshold matter, Dr. Pandarinath, an orthopedic surgeon, did not evaluate Ms. Pond or provide treatment related to Ms. Pond's mental health.[2] The only comment in his report somewhat related to Ms. Pond's mood or behavior was the following: "[I]t is difficult to elicit [medical] history from [Ms. Pond] and she is very somnolent." AR 428. This is not a medical opinion about whether Ms. Pond meets the Paragraph B criteria. *See* 20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1) ("Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions.") Therefore, the ALJ was correct in not relying on or evaluating Dr. Pandarinath's report with respect to the step-three analysis.

Ms. Franks, on the other hand, provided trauma counseling services to Ms. Pond. AR 550. She relayed the diagnoses Ms. Pond reported to her, including "recurrent, chronic major depression, depression due to physical illness, PTSD, anxiety and acute reaction to exceptional stress, with an onset of early adolescence." *Id.* She also relayed Ms. Pond's allegations of poor and unreliable memory as well as "becoming easily overwhelmed." AR 27. Ms. Franks concluded that the "combination of [Ms. Pond's] physical and mental conditions limited her capacity to concentrate, remember, and remain reliable and consistent at the time of the assessment." *Id.*

Contrary to Ms. Pond's assertion, the ALJ explicitly discussed and considered the supportability and consistency factors with respect to Ms. Franks's opinion. AR 20–21. When the ALJ viewed those opinions in the context of the whole record, the ALJ determined that the opinions of Dr. Nachbahr and Dr. Heiser were more persuasive than Ms. Franks's opinion. As the

---

[2] Dr. Pandarinath's report documented Ms. Pond's complaints of her knee pain and concluded that, given her weight, age, and lifestyle, she was an "extremely poor candidate" for a total knee replacement. AR 430.

ALJ described, Ms. Franks's medical opinion was not adequately supported because it "primarily consists of a restatement of [Ms. Pond's] allegations of psychiatric limitations." AR 29. Similarly, Ms. Franks's opinion was not consistent with the record demonstrating that Ms. Pond experienced only "mild" limitations in memory. AR 20–21. Therefore, the ALJ's decision that Ms. Franks's opinion was only partially persuasive, and thus not determinative of whether Ms. Pond met the Paragraph B criteria, was supported by substantial evidence because the ALJ properly explained the supportability and consistency factors. *Kyler*, 2022 WL 1165859 at *3.

Finally, Ms. Pond's claim that the ALJ mischaracterized her functioning report misses the mark. Ms. Pond claims that her own statements about her limited social activities and difficulty with authority, including a former employer, demonstrate more than just a "moderate" limitation in interacting with others. Pl.'s Mem. at 26–27. Even if Ms. Pond's assertion is correct, the functioning report, as discussed above, was only one of various sources explicitly mentioned by the ALJ in making the determination that her limitation was only "moderate." Because substantial evidence "requires more than a scintilla, but . . . less than a preponderance of the evidence," the Court finds that the ALJ's explanation of his conclusion was more than adequate. *Butler*, 353 F.3d at 999. Thus, Ms. Pond has not demonstrated that the ALJ erred when characterizing and evaluating her functioning report. *See Settles*, 121 F. Supp. 3d at 169.

*       *       *

The ALJ's conclusion that Ms. Pond did not meet the Paragraph B criteria was supported by substantial evidence because the ALJ discussed the relevant factors when evaluating medical opinions by Dr. Jett and Ms. Franks, appropriately considered the entire record, including from other medical sources such as Dr. Pandarinath, and explained how Dr. Jett's and Ms. Franks's opinions were inconsistent with the record and other medical opinions.

**B. The ALJ's RFC Determination Was Supported by Substantial Evidence**

The rest of Ms. Pond's motion challenges the ALJ's step-five determination, that she can still perform another job that is available in the national economy in light of her RFC, as "unsupported by substantial evidence because the ALJ failed to properly evaluate the opinion of [Dr.] Jefferies." Pl.'s Mem. 14. The Court disagrees.

This Circuit has defined the RFC as an assessment of "the claimant's uppermost ability to perform regular and continuous work-related physical and mental activities in a work environment." *Butler*, 353 F.3d at 1000 (citing 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1)). After reviewing the extensive record, the ALJ determined that Ms. Pond "has the residual functional capacity to perform sedentary work." AR 21. The ALJ further determined that she "can occasionally climb ramps and stairs; balance, stoop, kneel, crouch, and crawl," that she "can frequently reach overhead bilaterally," that she "can perform simple, routine tasks, requiring no more than occasional changes in the work setting, occasional judgment or decision-making, with no production rate for pace of work," and that she "can tolerate occasional interaction with the general public, co-workers, and supervisors." AR 21–22. Finally, the ALJ determined that Ms. Pond "can never climb ropes, ladders, and scaffolds" and that she "must avoid concentrated exposure to hazards, such as dangerous machinery and unprotected heights." *Id.*

Ms. Pond claims that the ALJ's RFC assessment of her physical abilities was not supported by substantial evidence because the ALJ did not properly evaluate Dr. Jefferies's opinion, which Ms. Pond contends establishes a much more limited RFC. Pl.'s Mem. at 16–18. Dr. Jefferies opined that Ms. Pond could only "sit for one hour and stand/walk one hour in an eight-hour workday," that she "would need to take unscheduled 15-minute breaks every two hours," and that she "could occasionally lift and carry up to ten pounds in a competitive work situation." AR 752–

53. Dr. Jefferies further indicated that Ms. Pond has an "extreme" limitation in all of the mental functioning areas. AR 755–57.

The ALJ evaluated Dr. Jefferies's opinion, discussed the supportability and consistency factors, and concluded that other evidence in the record was more persuasive and probative of Ms. Pond's RFC. AR 29. Regarding supportability, the ALJ definitively concluded that Dr. Jefferies's opinion on Ms. Pond's RFC was not supported by the record or even her own treatment notes. *Id.* As the ALJ explained, Dr. Jefferies's assessment of Ms. Pond as possessing extreme physical limitations "conflicts with the objective medical evidence that shows no more than moderate impairment in function due to psychiatric impairments." *Id.* Additionally, according to the ALJ, Dr. Jefferies's "opinion regarding [Ms. Pond's] ability to sit, stand and walk, and lift weight conflicts with the physical examination findings throughout the relevant period, as well as the claimant's testimony regarding what she can and cannot do." *Id.* Ms. Pond testified at the hearing that she can drive, walk, run errands, do laundry, take care of her dog and daughter, and bathe on her own. AR 28–29. The ALJ credited Ms. Pond's testimony in making the RFC determination over Dr. Jefferies's opinion. And again, this Court may not disturb the ALJ's decision regarding the weight of the evidence. *See Goodman*, 233 F. Supp. 3d at 104.

Thus, the ALJ's RFC determination was clearly based on substantial evidence.

## IV.   CONCLUSION

Ms. Pond has failed to demonstrate that the challenged ALJ decisions regarding her ineligibility for disability benefits were not based on substantial evidence. Therefore, the Court will **DENY** Ms. Pond's motion for reversal, **GRANT** the SSA's motion for affirmance, and **AFFIRM** the ALJ's decision.

A separate order will issue.

SIGNED this _____ day of June, 2023.

Royce C. Lamberth
United States District Judge